UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S SECOND MOTION FOR A BILL OF PARTICULARS

NOW INTO COURT, through undersigned counsel, comes the defendant, Mahmoud Amin Ya'qub Al-Muhtadi, who, for the factual and legal reasons set forth below, respectfully moves this Court under Federal Rule of Criminal Procedure 7(f) to direct the government to file a bill of particulars.

## I. Background

Mr. Al-Muhtadi was originally charged in a two-count indictment alleging conspiracy to provide material support to a foreign terrorist organization and visa fraud. [Doc. 16]. The defense moved for a bill of particulars directed to that indictment. [Doc. 54]. Before the Court ruled on that motion, the grand jury returned the four-count superseding indictment that is now the operative charging instrument, which mooted the first motion. [Doc. 60]. This second motion is directed to the superseding indictment.

Mr. Al-Muhtadi is now charged in a four-count superseding indictment

returned June 17, 2026. [Doc. 60]. Count 1 alleges that he conspired to provide material support to Hamas, a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B(a)(1), and identifies three categories of support: personnel including himself, weapons, and services. Count 2 is a *new* substantive count alleging that he provided and attempted to provide the same three categories of support to Hamas, also under § 2339B(a)(1). Both counts carry the death-resulted allegation of § 2339B(a)(1), which raises the statutory maximum from twenty years to life.

Count 3 alleges visa fraud under 18 U.S.C. § 1546(a), and now adds a *new* aiding-and-abetting theory under 18 U.S.C. § 2, based on five enumerated statements on the defendant's DS-260 application. Count 4 is a *new* count alleging a false statement under 18 U.S.C. § 1001(a)(2), resting on the same five statements and carrying an enhancement, under 18 U.S.C. § 2331, alleging that the offense involves international terrorism, which raises the statutory maximum from five years to eight years. [Doc. 60].

Although both material-support counts name Hamas as the organization supported, the government alleges only that Mr. Al-Muhtadi was a member of the Democratic Front for the Liberation of Palestine ("DFLP") and the National Resistance Brigades ("NRB"), neither of which is the designated organization, a gap that runs through every category of particulars the defense seeks below.

The superseding indictment opens with a general-allegations section of eight paragraphs that did not appear in the original indictment and is incorporated by

reference into all four counts. [Doc. 60 at 1–2]. It alleges that Hamas is a designated foreign terrorist organization; that the DFLP and its paramilitary wing, the NRB, were Gaza-based organizations that coordinated and cooperated with Hamas; that the DFLP was itself designated a Specially Designated Global Terrorist;[1] that the NRB and other groups were organized into a Hamas-led Joint Operations Room; that on October 7, 2023, Hamas acted with the DFLP and the NRB to perpetrate the attack in Israel; and that the defendant was a member of the DFLP and the NRB. [Doc. 60 at 1–2].

Beyond those background paragraphs and the bare statutory categories, the two material-support counts identify no specific personnel other than the defendant himself, no specific weapon, no specific service, no co-conspirator by name or description, and no specific death as the predicate for the § 2339B(a)(1) enhancement. [Doc. 60 at 2–3]. Count 1 alleges a conspiracy; Count 2 alleges a completed provision and an attempt; but neither count discloses which acts of this defendant are said to supply the personnel, weapons, or services the statute requires.

The criminal complaint affidavit and the government's pending motion in limine to admit battlefield evidence together reveal a far more sprawling theory than the indictment's words capture. [Doc. 1-1]; [Doc. 45]. The complaint affidavit identifies numerous distinct individuals or groups as potential co-conspirators,

---

[1] Notably, providing support to a Specially Designated Global Terrorist (like the DFLP or NRB) is not a violation of § 2339B.

mostly by kunyas or pseudonyms. [Doc. 1-1 ¶¶ 21–26, 29–43, 50–66]. It references weapons stretching across more than five years, from alleged April 2019 firearms-training photographs through a February 2025 Glock 26 photographed in Tulsa, Oklahoma. [Doc. 1-1 ¶¶ 29–30, 80–81]. The battlefield documents motion reaches further back still: Exhibit 4, dated January 29, 2017, is internal NRB correspondence reporting that the defendant, identified as one of its members, gave five Kalashnikov rifles and a blank-firing pistol belonging to the NRB to a member of Hamas's Izz Al-Din Al-Qassam Brigades for use at a party, after which the weapons were seized and the NRB disciplined the defendant and sought their return. [Doc. 45 at 11–13]. Across that span, none of the disclosures identifies which weapon, if any, the government will tie to the conduct charged on or about October 7, 2023. The government has produced more than five hundred thousand pages of discovery, and nothing in the indictment tells the defense which of that material corresponds to the conduct the grand jury charged.

This case has been certified as complex. [Doc. 36]. Procedures under the Classified Information Procedures Act are in place. [Doc. 27].

## II. Legal authorities

Federal Rule of Criminal Procedure 7(f) provides that the Court "may direct the government to file a bill of particulars." The granting of a bill of particulars is committed to the sound discretion of the trial court. *United States v. Mackey*, 551 F.2d 967, 970 (5th Cir. 1977). The Fifth Circuit's leading articulation of the device's

purposes is the *Mackey* three-purpose test:

> The purposes of a bill of particulars are to obviate surprise at trial, enable the defendant to prepare his defense with full knowledge of the charges against him, and to enable double jeopardy to be pled in case of a subsequent prosecution.

*Id. Mackey* expressly confirms that informing the defendant of the names of alleged unindicted co-conspirators has been held a proper use of a bill of particulars. *Id.* As another judge of this Court framed the question years ago, "[t]he proper function of a Bill of Particulars is to furnish the defendant with information beyond that contained in the [indictment] respecting the charge against him, when the information is necessary to the preparation of his defense." *United States v. Treatman*, 399 F. Supp. 264, 266 (W.D. La. 1975).

The government cannot cure an inadequate indictment by pointing to the criminal complaint or to the volume of discovery it has produced. The criminal complaint is sworn out by an FBI agent and reflects probable cause, not the grand jury's findings; the indictment, not the complaint, is what defines the offense the defendant must answer. The complaint was, moreover, superseded by two grand jury indictments, and it cannot enlarge, narrow, or define the offense the grand jury actually charged. That the defense can extract facts from the affidavit is no answer, because the affidavit names many candidates for each statutory category without disclosing which the grand jury charged; the defendant is left to guess which of the affidavit's many individuals, weapons, and acts he must be prepared to meet at trial. The Supreme Court has long recognized that the indictment must do its work on its

own terms; even "a bill of particulars cannot save an invalid indictment," *Russell v. United States*, 369 U.S. 749, 770 (1962), and *a fortiori* materials outside Rule 7(f) cannot. As the Second Circuit has explained, the government "did not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided as to which documents would be proven." *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987); *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars"). The bill of particulars is the device Rule 7(f) provides to fill the gap the indictment leaves between its generic categories and the specific case the defense will have to meet.

### A. *Russell* requires particularization where the indictment uses generic statutory terms

The Supreme Court has long held that an indictment may not rely on the generic terms of a statute to charge a specific offense. *Russell*, 369 U.S. at 765. In *Russell*, the Court explained:

> It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, "includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars."

*Id.* (quoting *United States v. Cruikshank*, 92 U.S. 542, 558 (1875)); *see also United States v. Diecidue*, 603 F.2d 535, 547 (5th Cir. 1979) (the Fifth Circuit citing *Cruikshank* for the same proposition). The *Russell* Court added that a "cryptic form of indictment in cases of this kind requires the defendant to go to trial with the chief

issue undefined." *Id.* The *Russell* rule operates above the indictment-sufficiency floor set by *Hamling v. United States*, 418 U.S. 87, 117 (1974); an indictment may pass that floor and still require a bill of particulars where the statutory terms remain generic.

The *Russell* rule rests on three constitutional anchors. The first is the Fifth Amendment's grand jury clause, which guarantees that a defendant be tried only on the conduct the grand jury actually charged. *Russell*, 369 U.S. at 760–61. The second is the Sixth Amendment's right to be "informed of the nature and cause of the accusation." *Id.* at 761. The third, derived from the first two, is the protection against double jeopardy: the indictment must enable the defendant, "in case any other proceedings are taken against him for a similar offense," to show "with accuracy to what extent he may plead a former acquittal or conviction." *Id.* at 764; *Mackey*, 551 F.2d at 970 (listing double jeopardy among the purposes of a bill of particulars). Each anchor is in play here.

Section 2339A(b)(1), incorporated by § 2339B(g)(4), defines material support or resources to include fourteen categories of conduct, among them personnel, weapons, and services. Counts 1 and 2 of the superseding indictment track three of those categories verbatim, without further specification. [Doc. 60 at 2–3]. That is the paradigm of generic-term pleading.

### B. *Warsame* applies *Russell* to § 2339B prosecutions

In *United States v. Warsame*, 537 F. Supp. 2d 1005 (D. Minn. 2008), the district

court granted a bill of particulars in a § 2339B prosecution because "the charges of material support contained in the Superseding Indictment were not sufficiently detailed to allow Warsame to effectively challenge the constitutionality of 18 U.S.C. § 2339B." *Id.* at 1010. The court reasoned:

> Warsame's vagueness challenge to § 2339B requires an examination of whether the statute provides sufficient notice of the criminality of Warsame's alleged conduct. As such, the prosecution must set forth both the precise charges of material support under 18 U.S.C. § 2339A(b)(1), as well as specific factual allegations of criminal conduct.

*Id.* at 1012. The court applied that principle to "personnel," finding that allegations of communications with terrorist associates "are not sufficient, without more, to survive a vagueness challenge" absent specific factual tie-ins to terrorist activity. *Id.* at 1018. The same analysis governed "training." *Id.* at 1020.[2]

Compare *Warsame* with the Southern District of New York's decision in *United States v. Sattar*, 314 F. Supp. 2d 279 (S.D.N.Y. 2004) to deny a bill of particulars in a § 2339A material-support prosecution with an incredibly detailed 45-paragraph indictment. The indictment in *Sattar* named specific co-conspirators (including Sheikh Omar Abdel Rahman and Rifa'i Ahmad Taha Musa), identified specific dates of prison visits, and described particular overt acts including the May 2000 prison visit and the October 2000 fatwah. *Id.* at 286–94. The government had also

[2] The amended scheduling order sets September 15, 2026 as the deadline for all other pretrial motions. [Doc. 66]. The defendant intends to file substantive pretrial motions by that deadline, which may include an as-applied challenge to 18 U.S.C. § 2339B of the kind addressed in *Warsame*. The particulars sought here are necessary to frame and litigate any such challenge.

supplemented the indictment with detailed factual representations in its briefing and at argument, which the government itself conceded could be taken as a bill of particulars. *Id.* at 318–19. Counts 1 and 2 of the superseding indictment, by contrast, identify none of those particulars. [Doc. 60 at 2–3].

## III. Argument

The defense seeks only the information *Mackey* recognizes as the proper information sought in a bill of particulars: notice sufficient to obviate surprise at trial, to enable the preparation of a defense with knowledge of the charges, and to permit a plea of double jeopardy. It does not ask the government to disclose its evidence or to explain the theory of its proof. Where an element of the offense is itself a specific act or a specific result, as with the substantial step the attempt theory requires, the acts that constitute aiding and abetting, and the death that triggers the enhancement, identifying that act or result is notice of what is charged rather than a disclosure of how the government will prove it. Each request set out below is tied to an element the government must prove or to one of these recognized purposes.

### A. The superseding indictment's general allegations do not cure the generic pleading of the charged elements

The superseding indictment's general allegations describe organizations and their relationships: that the DFLP and the NRB "coordinated and cooperated" with Hamas, that a Joint Operations Room existed, and that the defendant belonged to the DFLP and the NRB. [Doc. 60 at 1–2]. They say nothing about which acts of this defendant supply the personnel, the weapons, or the services that the statute makes

the elements of the offense, and they do not connect his alleged membership in two organizations that are not the charged foreign terrorist organization to the provision of support to Hamas, which is. The general allegations sharpen the government's narrative without descending to the particulars *Russell* and *Warsame* require, and they therefore confirm, rather than cure, the need for a bill of particulars.

**B. The personnel category in Counts 1 and 2 requires particularization**

The personnel category under § 2339B is narrower than its statutory language suggests. The Fifth Circuit Pattern Jury Instruction confirms that no defendant may be convicted in connection with the term "personnel" unless the personnel were provided "to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization," and that "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." 18 U.S.C. § 2339B(h); *Fifth Cir. Pattern Jury Instr. (Criminal)* 2.92B (2024). The direction-and-control requirement is rooted in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), which held that § 2339B reaches support coordinated with or under the direction of a designated foreign terrorist organization but not independent advocacy.

The complaint affidavit names a series of individuals and groups as candidates for the personnel category, mostly by kunya or pseudonym. [Doc. 1-1 ¶¶ 21–26, 29–43, 50–66]. The defense cannot meet the personnel theory across both counts without

knowing which of these candidates the government will rely on, and what instructions, directions, or coordination from Hamas, as opposed to the DFLP or the NRB, the government will use to satisfy the direction-and-control element for a defendant who is not alleged to be a member of Hamas. See *Humanitarian Law Project*, 561 U.S. at 31–39; *Warsame*, 537 F. Supp. 2d at 1018.

### C. The weapons category in Counts 1 and 2 requires particularization

The weapons category sweeps an unusually broad temporal range. The complaint references weapons in the defendant's alleged possession from April 2019 through February 2025. [Doc. 1-1 ¶¶ 29–30, 80-81]. The battlefield documents motion adds a January 2017 transaction in which the defendant allegedly gave rifles to a supposed Hamas member in an unauthorized transfer. [Doc. 45 at 11–13]. The most detailed weapon allegation in the complaint is a Russian-made 1984 rifle, serial PS 20592, with three magazines and ninety bullets, identified as the property of the NRB, not Hamas, and received by the defendant from the NRB. [Doc. 1-1 ¶ 31]. Other allegations include a rocket-propelled grenade launcher photographed in November 2020, numerous automatic rifles, ammunition magazines, a bulletproof vest, and a motorcycle. [Doc. 1-1 ¶¶ 37–38, 56, 58, 60, 63–65]. A Glock 26 photographed in Tulsa, Oklahoma, in February 2025, some sixteen months after the alleged offense, raises the further question of how a firearm in Oklahoma is alleged to have been provided to Hamas. [Doc. 1-1 ¶¶ 80–81]. The disclosures do not indicate which, if any, of these weapons the government will tie to the conduct charged on or about October 7, 2023.

The provision of weapons is one of the three statutory forms of material support that the government must prove as an element of Counts 1 and 2. See 18 U.S.C. § 2339A(b)(1); § 2339B(g)(4). The superseding indictment identifies no weapon. The defense does not ask the government to prove that a weapon was provided; it asks only to know which weapon, among those the disclosures place between 2017 and 2025, the grand jury charged, so that the defense can prepare to meet that element and is not surprised at trial. The defense therefore cannot prepare on the weapons category, under either count, without knowing which weapons the government contends were provided to Hamas, when and where, and whether weapons predating October 7, 2023 are alleged to be part of the offense itself.

**D. The services category in Counts 1 and 2 requires particularization**

The services category is the most amorphous of the three. Section 2339A(b)(1) lists "service" without further definition. The Fifth Circuit Pattern Jury Instruction adds no definition. *Fifth Cir. Pattern Jury Instr. (Criminal)* 2.92B (2024). *Warsame* ordered particularization for this exact reason: a § 2339B indictment that lists categorical statutory terms without specifying which services were provided does not give the defendant the notice required to prepare a defense or to mount an as-applied constitutional challenge. 537 F. Supp. 2d at 1011–12, 1018–20. Like personnel and weapons, the provision of a service is an element of Counts 1 and 2 that the government must prove, and the defense seeks only the identification of the charged service, not the evidence by which the government will prove it. The defense cannot

defend the services category without knowing what service the government will charge.

The need is especially acute here because of the unresolved role of the alleged Joint Operations Room. The superseding indictment's general allegations invoke a Hamas-led Joint Operations Room. [Doc. 60 at 2]. In the battlefield documents briefing, the government relied on that same Joint Operations Room for a different and purely evidentiary purpose, offering it as the joint venture the government must establish before it can admit the statements of alleged co-conspirators against the defendant under Federal Rule of Evidence 801(d)(2)(E). [Doc. 45 at 22–27]. That evidentiary use does not disclose whether the government also contends that the defendant's participation in the Joint Operations Room is itself one of the services charged in Counts 1 and 2. The answer affects many aspects of the defense, from the hiring of experts to overseas investigation strategy.

### E. The death-resulted enhancement in Counts 1 and 2 requires particularization

The death-resulted enhancement raises the statutory maximum on both material-support counts from twenty years to life. [Doc. 60 at 3]. Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 570 U.S. 99 (2013), it is an element that must be charged in the indictment and proved to the jury beyond a reasonable doubt. The superseding indictment alleges it in a single sentence on each count, that death resulted from the commission of the offense, and identifies no particular death, no location, no cause, and no causal connection to the defendant's

conduct. [Doc. 60 at 3].

The October 7 attack involved more than a thousand deaths across multiple locations in Israel. [Doc. 1-1 ¶ 8–12]. The complaint identifies three victims killed at or near Kfar Aza. [Doc. 1-1 ¶¶ 13–16]. The enhancement requires the government to prove but-for causation of a particular death. *Burrage v. United States*, 571 U.S. 204, 211 (2014) (the term "results from" imposes "a requirement of actual causality," requiring "proof 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct"). The defense cannot prepare to litigate that question without knowing whose death the government will attempt to prove. Particularization here also serves the double jeopardy function: without identifying the predicate death on the record, neither Mr. Al-Muhtadi nor a future court will be able to determine the scope of any former-conviction defense should the same death later be charged under another statute.

**F. The identities of the unindicted co-conspirators in Count 1 must be particularized**

Count 1 alleges that the defendant conspired with "other persons known and unknown to the Grand Jury." [Doc. 60 at 2]. The Fifth Circuit has held that informing the defendant of the names of alleged unindicted co-conspirators is a proper use of a bill of particulars. *Mackey*, 551 F.2d at 970. In a terrorism prosecution, the Southern District of New York ordered the government to disclose the identities, including all aliases and code names, of the unindicted co-conspirators to whom it would refer at trial. *Bin Laden*, 92 F. Supp. 2d at 241. The complaint here refers to numerous

individuals by kunyas, pseudonyms, or generic description. [Doc. 1-1 ¶¶ 21–26, 29–43, 50–66]. Without their identities the defense cannot evaluate a multiple-conspiracies defense, see *Kotteakos v. United States*, 328 U.S. 750 (1946), the independent-advocacy line drawn in *Humanitarian Law Project*, or the direction-and-control limit on personnel. Particularization also serves the double-jeopardy purpose recognized in *Mackey*, because without knowing who the unnamed co-conspirators are, neither the defendant nor a later court can determine whether a successor prosecution charges the same conspiracy or a different one.

### G. Count 2 requires the government to identify the substantial step it will prove on the attempt theory

Count 2 is new, and it alleges that the defendant did "provide and attempt to provide" material support. [Doc. 60 at 3]. An attempt theory carries an element the completed-provision theory does not: an attempt requires proof of a substantial step toward the provision of support. *See Fifth Cir. Pattern Jury Instr. (Criminal)* 1.34 (2024) (an element of attempt is that "the defendant did an act that constitutes a substantial step towards the commission of that crime and that strongly corroborates the defendant's criminal intent and amounts to more than mere preparation"); *see also United States v. Farhane*, 634 F.3d 127, 146 (2d Cir. 2011) (applying the substantial-step attempt element to a § 2339B prosecution). Because the substantial step is an element the government must prove, and because the superseding indictment identifies none, the government should be required to specify the substantial step it will contend the defendant took toward the provision of material

support to Hamas.

### H. The aiding-and-abetting theory added to Count 3 requires particularization of the principal and the acts of assistance

Count 3 adds, for the first time, an aiding-and-abetting theory under 18 U.S.C. § 2. [Doc. 60 at 5]. Aiding-and-abetting liability requires an act facilitating the offense and an intent extending to the whole of it. *Rosemond v. United States*, 572 U.S. 65 (2014). The government need not convict the principal to obtain an aiding-and-abetting conviction, and that very rule is why the defense must be told the government's theory now: it cannot otherwise know whose visa-fraud offense the defendant is alleged to have aided, or what acts are said to constitute the aiding. The defense does not seek particulars on the five enumerated false statements in Counts 3 and 4, which are stated with sufficient specificity, but the newly added aiding-and-abetting theory introduces a principal and a set of facilitating acts that the indictment leaves entirely unstated. The government should identify the principal and the acts of assistance on which it will rely. Beyond that theory, the defense seeks no particulars as to Count 4: the five statements on which it rests are pleaded with the same specificity as those in Count 3, and no further particularization is needed to prepare to meet them.

## IV. Requested bill of particulars

For the foregoing reasons, the defense respectfully requests that the Court order the government to file a bill of particulars stating the following, each request being directed to an element the government must prove or to the notice the defense needs to avoid surprise and prepare its defense:

***Personnel category, Counts 1 and 2***

1. Identify each individual the government will contend constituted the personnel alleged in Counts 1 and 2, by name where known and by best available description where the identity is unknown to the grand jury.

2. As to each identified individual, specify whether the government will contend that the individual was (a) working under Hamas's direction or control, or (b) organizing, managing, supervising, or otherwise directing the operation of Hamas.

3. Identify the specific instructions, directions, agreements, or coordination from Hamas on which the government will rely to satisfy the requirement that the defendant acted under the direction or control of Hamas.

4. Identify the date, place, and means by which each identified individual was allegedly provided to Hamas.

***Weapons category, Counts 1 and 2***

5. Identify by description, model, serial number where known, or other identifying information each weapon the government will contend constituted the weapons alleged in Counts 1 and 2.

6. Specify the date and place at which each identified weapon was allegedly provided to Hamas.

7. Specify whether the government will contend that any weapon dated before October 7, 2023, including the rifles referenced in the January 29, 2017 document attached as Exhibit 4 to the government's motion in limine and the

Russian-made 1984 rifle, serial PS 20592, referenced in the complaint affidavit, was itself part of the alleged provision to Hamas.

8. Specify whether the government will contend that ammunition, magazines, bulletproof vests, motorcycles, or other associated items are themselves within the scope of the weapons alleged in Counts 1 and 2.

***Services category, Counts 1 and 2***

9. Identify each service the government will contend constituted the services alleged in Counts 1 and 2.
10. Specify the date and place at which each identified service was allegedly provided.

11. Specify the alleged recipient of each identified service within Hamas, by name or, where the identity is unknown, by best available description.

12. Specify whether the government will contend that participation in the alleged Joint Operations Room is, in and of itself, a service charged in Counts 1 and 2, as distinct from a predicate joint venture relied upon for Federal Rule of Evidence 801(d)(2)(E) purposes.

***Death-resulted enhancement, Counts 1 and 2***

13. Identify by description, and by name where known, each death the government will contend resulted from the offense for purposes of the § 2339B(a)(1) enhancement.

14. Specify the date, time, and place of each identified death.

15. Specify the manner in which each identified death is alleged to have resulted from the offense.

***Unindicted co-conspirators, Count 1***

16. Identify by name, or by best available description where the identity is unknown to the grand jury, each other person alleged to have conspired with the defendant, including all aliases and code names.

17. Specify the role of each identified co-conspirator in the alleged conspiracy.

***Attempt theory, Count 2***

18. Identify the substantial step the government will contend the defendant took toward the provision of material support to Hamas, as alleged in the attempt theory of Count 2.

***Aiding and abetting, Count 3***

19. Identify the principal whose violation of 18 U.S.C. § 1546(a) the defendant is alleged to have aided and abetted, and the specific acts by which the defendant is alleged to have aided and abetted that violation.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: *s/ Dustin C. Talbot*
DUSTIN C. TALBOT
First Assistant / Appellate Chief

*s/ Aaron A. Adams*
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 24, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

*s/ Dustin C. Talbot*