# EXHIBIT A

## Request-by-request schedule — demonstrative aid

*United States v. Al-Muhtadi, No. 25-285 (W.D. La.)*

This schedule is a demonstrative aid, not evidence. It summarizes, request by request, what the government produced or represented, what it ignored, and what it deferred to litigation under the Classified Information Procedures Act, based on the government's June 8, 2026 and July 6, 2026 discovery responses (Exhibits B and C) and the accompanying productions. "Ignored" denotes an enumerated request to which the government's written responses made no substantive reply. "Deferred to CIPA" denotes a request the government routed to its CIPA filings. Nothing in this schedule is a concession as to the discoverability of any item.

### First Request for Specific Discovery (Doc. 47) — battlefield documents and expert-witness materials

| # | What the defense specifically requested | Government response |
|---|---|---|
| **A. Chain-of-custody documentation for each exhibit** | | |
| 1 | All chain-of-custody records for each device from seizure to the FBI, including intermediate transfers, storage locations, handling logs, the device's state at seizure, any passcode or encryption bypass method, every AMSHAT intake and processing log with the analyst's identity, and any IDF/ISA-to-FBI transfer certificate. | **Partially produced.** "All chain of custody documents in its possession" (Ex. B at 1); AMSHAT logs, bypass method, and transfer certificates not produced. |
| 2 | The military unit, date, and location of seizure for each device; any field report, after-action summary, inventory log, or seizure footage; and whether the device came from a deceased person or a previously held location. | **Ignored.** Treated as part of the chain-of-custody narrative in Docs. 45 and 46; not separately addressed. |
| **B. Identity of the declarants** | | |
| 3 | The identity of the authors of Exhibits 2, 3, and 4, with name, title, rank, and unit; all materials reflecting any effort to identify them; and any U.S.-Israel communication about their availability or testimony. | **Partially answered.** Authors "provided on the documents themselves"; unredacted Exhibits 2 and 3 agreed (Ex. B at 1); identification efforts not addressed. |
| 4 | The identity of the person(s) who compiled the Hamas financial-support spreadsheet behind Exhibit 1 and the database custodian; the selection methodology; and all entries for any person with the same or overlapping name. | **Partially produced.** Native ledger produced (FBI-535688); compiler, methodology, and overlapping-name entries ignored. |
| 5 | For Exhibits 2 and 3, the identity of each person photographed; whether the government sought to interview them; their custodial status; and any biographical or intelligence record. | **Partially answered.** Unredacted mortar report offered on request (Ex. B at 1); interview, custody, and biographical materials ignored. |

DEFENDANT'S EXHIBIT
A

| | | |
|---|---|---|
| **C. Complete and native-format production of each exhibit** | | |
| 6 | A complete forensic image, extraction, and download of each device — all acquired data, tool reports, recovered files, acquisition logs, hash values, and bypass methods — in native format. | **Ignored.** Not addressed. |
| 7 | The native digital file for each of the six exhibits with all file-system metadata intact; a hash value and verification methodology for each; and the corresponding source-device hash. | **Partially produced.** One native file (FBI-535688); no file-system metadata or hash values for any exhibit. |
| 8 | The complete file directory and folder structure of each device from which an exhibit was retrieved, so the defense can assess storage context and file-path corroboration. | **Ignored.** |
| 9 | Information sufficient to identify the user(s) of each device — account, login, and credential records, contact lists, call logs, messaging, and application data bearing on whose device it was. | **Ignored.** |
| 10 | The complete, unredacted Exhibit 1 spreadsheet in native format with metadata, plus the database schema, table structure, and the query or export that produced the three-page exhibit. | **Partially produced.** Native ledger produced; completeness of the three inconsistent pages, the schema, and the export script ignored. |
| **D. Translation and interpreter materials** | | |
| 11 | Full credentials, training, and certification for each FBI linguist who translated any exhibit, including certified language pairs and any quality-review process. | **Promised.** Future FBI-linguist expert notice (Ex. B at 2). |
| 12 | Any communications between Avi and the FBI translators, including any review or requested revision of a translation. | **Answered.** "No interactions between Avi and the interpreters" (Ex. B at 2). |
| 13 | The original Arabic-language digital file for each exhibit, beyond the scanned PDFs, for review by defense experts and translators. | **Partially produced.** Original Arabic provided (Ex. B at 2); native originals for all six exhibits not confirmed. |
| **E. Expert-witness materials — "Avi"** | | |
| 14 | The real name and full identifying information of the expert disclosed as "Avi." | **Deferred to CIPA.** Pseudonym "addressed in the Government's public filing for security measures and in the Government's CIPA motion" (Ex. B at 2). |
| 15 | The complete, unredacted curriculum vitae and bibliography, and any prior public statement about Hamas, the DFLP, the October 7 attack, or the defendant. | **Ignored.** |

| | | |
|---|---|---|
| 16 | All materials reflecting hostility toward Palestinians, Arabs, or Muslims, or any personal, ideological, institutional, financial, or political interest in the outcome. | **Ignored.** |
| 17 | Transcripts of all prior testimony by Avi under any name; a list of every proceeding with jurisdiction and Daubert outcome; and any prior expert report on Hamas structure or document authentication. | **Partially produced.** HLF transcripts produced (FBI-534217–535680); list of all proceedings and prior reports ignored. |
| 18 | The methodology, written protocol, validation study, and error-rate procedure for the authentication assessment, plus the databases and rosters Avi will use to validate the identifiers in Exhibits 2 and 3. | **Ignored.** |
| 19 | All materials on how Avi was selected and retained, any agreement limiting his testimony, and his compensation and any benefit tied to his cooperation. | **Ignored.** |
| 20 | Any communications between the witness and Israeli officials, U.S. prosecutors, or advocacy groups concerning this prosecution or the anticipated testimony. | **Ignored.** |
| 21 | All materials reflecting motive, bias, institutional loyalty, political pressure, or reputational interest bearing on the testimony. | **Ignored.** |
| 22 | All information on whether the witness has been referenced in international investigations or reports of intelligence abuses or IHL violations, or associated with units under external scrutiny. | **Ignored.** |
| 23 | All materials on whether the witness participated in conduct that is the subject of war-crimes, torture, or evidence-manipulation allegations. | **Ignored.** |
| 24 | Comparator and base-rate materials to test Avi's methodology, and any prior occasion where his attribution was later shown wrong or criticized by a court. | **Ignored.** |
| **F. AMSHAT procedures and personnel** | | |
| 25 | Any AMSHAT written protocol or SOP for receiving, cataloging, extracting, and preserving combat-seized digital devices, including the protocol in effect when these devices were processed. | **Ignored.** |
| 26 | The identity of each AMSHAT analyst who handled, imaged, or reported on each device, absent a specific documented national-security determination. | **Ignored.** |
| **G. Materiality and reliability of specific exhibits** | | |
| 27 | Any report or internal communication reflecting doubt or uncertainty about the accuracy or authenticity of any of the six exhibits, including any analyst who noted anomalies. | **Ignored.** |

Defendant's Exhibit A-003

| | | |
|---|---|---|
| 28 | All materials reflecting geolocation or coordinates for Exhibit 5 (satellite map) and Exhibit 6 (photograph), including imagery source, unredacted EXIF or geotag metadata, and the annotator's identity. | **Ignored.** |
| 29 | As to Exhibits 2 and 3, any prior version or related internal-security file on the same incident, and any comparison exemplar bearing on the authenticity of the format. | **Ignored.** |
| **H. Brady, Giglio, and residual disclosure** | | |
| 30 | All materials, including materials held by any Israeli agency, tending to show any exhibit is fabricated, altered, or unreliable, or otherwise to exculpate the defendant. | **Ignored.** |
| 31 | All communications between the FBI, DOJ, and any Israeli agency about the battlefield documents, including any qualification about accuracy, provenance, or chain of custody. | **Ignored.** |
| **I. Investigative predication and Israeli legal process** | | |
| 32 | The date the defendant first became a subject, the predicating information and its source, and any confidential-source, intelligence, or foreign-tip reporting naming him before the exhibits were transferred. | **Partially answered.** Complaint affidavit and related serials (Ex. B at 2); predication source detail not separately provided. |
| 33 | Any FISA, Title III, or other surveillance product referencing the defendant, and any analysis comparing it to the six exhibits. | **Answered.** "Not been the subject of FISA collections or Title III surveillance" (Ex. B at 2). |
| 34 | Any statement by a cooperating witness or other individual in custody bearing on the defendant's identity or affiliation, including any statement failing to recognize him or contradicting the exhibits. | **Partially answered.** Undercover interactions produced (Ex. B at 2); non-recognition or contradiction statements ignored. |
| 35 | Any Israeli judicial authorization or administrative process authorizing each seizure, any legal review before transfer, the classification applied, and any Israeli condition on use or testimony. | **Ignored.** |

**Section III (Doc. 47 § III).** The First Request included a foreign-custody accounting protocol requiring the government to identify any responsive material it contends is held by the government of Israel. The June 8 response did not provide that accounting.

**Second Request for Specific Discovery (Doc. 70) — audio recordings and cell-site location data**

| # | What the defense specifically requested | Government response |
|---|---|---|
| **II. Audio recordings** | | |
| 1 | Every additional recording, beyond the six produced, to or from the same device, SIM, or number from October 7–14, 2023, in native format with metadata, and the complete call-detail and cell-site data for each. | **Partially answered.** "All audio recordings in its possession" (Ex. C at 2); completeness, native format, and associated data not confirmed; otherwise CIPA. |
| 2 | Every recording to or from any other device the government attributes to the defendant, October 7–14, and, for any attributed device that yielded no recording, a statement of the basis for attribution and why no recording is available. | **Partially answered.** Covered by "all audio recordings in its possession"; no attribution or non-retention statement provided. |
| 3 | For each of the six recordings, how, when, and by whom the call was captured, the technology used, the responsible agency and unit, and the start time and duration. | **Promised / CIPA.** 302 memorializing a May 2026 interview "currently being declassified" (Ex. C at 2); otherwise CIPA. |
| 4 | The legal authority for the interception of each call — any Israeli wiretap order, military authorization, MLA request, Title III order, FISA authorization, or consent — with any application and affidavit. | **Deferred to CIPA.** |
| 5 | The telephone numbers and device identifiers (MSISDN, IMSI, IMEI) and the identity of every participant on each call, and the factual predicate for targeting the identifier. | **Ignored.** |
| 6 | A complete chain-of-custody record for each recording, from capture through transfer to the United States, including storage systems, retention policy, access logs, and FBI intake documentation. | **Ignored.** |
| 7 | For each recording, the original native file in its capture codec; confirmation whether the produced .mp3 is a re-encoding of a master; hash values for both; and identification of any gap, edit, or deletion and its author. | **Ignored.** Only the six .mp3 files — no masters, hashes, or transcoding records. |
| 8 | Any line sheet, monitor log, intercept log, or contemporaneous note associated with the six recordings, and any validation or calibration documentation for the capture equipment. | **Ignored.** |
| 9 | Whether the six recordings are the complete set of communications collected for the relevant identifiers or a selection; if a selection, the total number, the criteria, and who made it; and the complete set. | **Ignored.** |
| 10 | Any recording or communication reflecting doubt about authenticity; any intercepted communication in which the defendant was not identified or was | **Ignored.** |

| | | |
|---|---|---|
| | affirmatively excluded; and any communication inconsistent with the government's theory. | |
| **III.** | **Cell-site and location data** | |
| 11 | As to FBI-463126, the author, creation date, carrier, and generating system; whether it is an original business record or a derivative summary; and the complete underlying raw call-detail and cell-site records in native format. | **Partially produced.** Data "in its possession" turned over, including FBI-463126 (Ex. C at 2); author, system, and underlying raw native records not provided. |
| 12 | The complete, unredacted document at FBI-464246, including the full Cellcom engineer's report, a description of the "completely automated process," the system name and version, and the query or export that generated the records. | **Partially answered.** "No substantive redactions … only standard redactions pursuant to FBI protocols" (Ex. C at 2); process description, system/version, and export not provided. |
| 13 | Each item the engineer's report identifies as a basis for his opinion — the "subscriber's call records," the "matched call records," and the "additional technical data" on coverage ranges — in native format. | **Ignored.** |
| 14 | For every Cellcom cell or sector on which any attributed device registered, and every site covering the Gaza-border corridor, the site coordinates, sector azimuth and orientation, beamwidth, antenna height, downtilt, transmit power, and frequency band. | **Ignored.** |
| 15 | All coverage, propagation, drive-test, radio-frequency survey, and predictive-modeling data bearing on whether any Cellcom site's coverage extends into Gaza, and the matching methodology. | **Ignored.** |
| 16 | Any map, plot, overlay, or diagram depicting the location of any attributed device or the coverage of any site, in native format with the underlying data intact. | **Ignored.** |
| 17 | The complete Cellcom roaming and registration records and the complete Jawwal home-network call-detail records for any attributed line, with the full technical fields. | **Ignored.** |
| 18 | The Jawwal–Cellcom international roaming and interconnection agreement in effect during October 2023, and any record describing how a Jawwal subscriber in Gaza would register on the Cellcom network. | **Ignored.** |
| 19 | All data behind the engineer's assertions that Gaza-area subscribers have priority on their Jawwal home network and receive the local signal at higher strength, including configuration, roaming-steering, and RF measurements. | **Ignored.** |

| | | |
|---|---|---|
| 20 | All Jawwal subscriber, registration, IMSI, and IMEI records tying any line at issue to the defendant, and any record bearing on whether the line had a single or multiple users. | **Ignored.** |
| 21 | Any report or work product by the FBI Cellular Analysis Survey Team (CAST) or any U.S. analyst interpreting the cell-site data, the identity of any such analyst, and any derived trial exhibit. | **Promised.** CAST expert disclosure "no later than September 4, 2026" (Ex. C at 2). |
| 22 | Any record reflecting a location inconsistent with the government's theory, or acknowledging the accuracy limits of historical cell-site or roaming-registration evidence, and any analyst note reflecting doubt. | **Ignored.** |
| 23 | Any information that any Israeli entity has fabricated, altered, or destroyed any evidence pertaining to Gaza, Hamas, the DFLP, or the events of October 7, 2023. | **Ignored.** |

**Section IV (Doc. 70 § IV).** The Second Request included a foreign-custody accounting protocol for materials the government contends are held by a foreign government or carrier. The July 6 response did not provide that accounting.