UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 25-00285-1 |
| VERSUS | JUDGE JOSEPH |
| MAHMOUD AMIN YA'QUB AL-MUHTADI | MAGISTRATE JUDGE WHITEHURST |

# EXPERT WITNESS DISCLOSURE: ERIC M. GRABSKI

NOW INTO COURT comes the defendant, Mahmoud Al-Muhtadi, through undersigned counsel, who provides notice under Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure and Rules 702, 703, and 705 of the Federal Rules of Evidence that he intends to call Eric M. Grabski as an expert in historical cell site location analysis. Mr. Grabski will respond to the testimony of FBI Special Agent Kevin P. Hoyland. Doc. 93.

Mr. Grabski is a Senior Digital Forensic Examiner Principal Consultant at Envista Forensics. His curriculum vitae, attached as Exhibit A, details his education, training, certifications, and work experience. He has no publications in the previous ten years. In the previous four years, he has testified as an expert at trial or by deposition in the cases listed in Exhibit B.

Mr. Grabski will testify about how cell phones communicate with cellular

networks, how carriers record that activity in call detail records, and what those records can and cannot show about a phone's location. He will also explain how a phone subscribed to one carrier roams onto another carrier's network. Applying those principles to the October 7, 2023 Cellcom records for the phone number the government attributes to Mr. Al-Muhtadi, Mr. Grabski will offer the following opinions.

First, Mr. Grabski will testify that a call detail record identifies the cell site and sector that served a phone, and it does not identify where the phone was. A phone can connect with a sector from anywhere within that sector's coverage area, and the wedges in Special Agent Hoyland's PowerPoint do not depict that coverage area.

Second, Mr. Grabski will testify that Cellcom site 5093, Sector 3, which served the phone for all seven October 7 records, was a 2G (GSM) sector aimed west toward Gaza, and that its coverage area extends across the border into northern Gaza, including the Shuja'iyya, Jabalia, and Zaytun areas. Further, Mr. Grabski will testify that all seven records on site 5093, Sector 3 and that Cellcom engineering records confirm that this sector provides signal coverage across the Israeli border into Gaza.

Third, Mr. Grabski will testify that the Cellcom records are consistent with the phone being in northern Gaza when six text messages and one call were recorded between 9:49 and 10:01 a.m. A Jawwal phone in Gaza can roam onto an Israeli network, including Cellcom, when its Jawwal signal falls below the threshold the Jawwal network sets and a usable signal from another network is available.

Fourth, Mr. Grabski will testify that the records cannot establish which side of the border the phone was on, because nothing in them narrows the phone's position within Sector 3's coverage area.

Fifth, Mr. Grabski will testify that the phone's preference for its home Jawwal network does not make it "very likely" that the phone was in Israel. Doc. 93 at 2. Signal conditions at the phone govern that preference, and those conditions can cause a Jawwal phone to roam while it is inside Gaza. The government has produced no Jawwal records or network data.

Sixth, Mr. Grabski will testify that the phone's 2G-only design does not increase the likelihood that the phone was in Israel. A 2G-only phone can use only 2G cells. That limitation explains why the phone used this GSM sector, and it says nothing about which side of the border the phone was on.

Seventh, Mr. Grabski will testify that Special Agent Hoyland's premise that cell towers operate the same way worldwide, Doc. 93 at 2, does not resolve the location question here, because each carrier configures its own network, including the signal thresholds that control when a phone roams.

Eighth, Mr. Grabski will testify that Special Agent Hoyland's analysis lacks the data and testing needed to place the phone on one side of the border, such as a drive test or other radio-frequency survey, coverage modeling, Jawwal network data, and timing-advance or neighboring-cell data. Mr. Grabski will testify to the cell site location information and calls occurring on August 13, 2023 and October 1, 2023.

Mr. Grabski bases these opinions on generally accepted principles of historical cell site location analysis, on his training and experience, and on his review of the discovery, including Special Agent Hoyland's notice and PowerPoint, the Cellcom records, and the translated documents from Israeli cellular providers, including the engineering opinion and coverage maps that Roni Avrahami prepared for Cellcom.

Mr. Grabski may use demonstrative aids, which the defense will produce before trial. The defense will supplement this disclosure under Rule 16(c) if additional discovery or examination findings cause Mr. Grabski to modify or add to his opinions.

Under Rule 16(b)(1)(C)(v), Mr. Grabski has reviewed this disclosure and approves it, as shown by his signature below.

ERIC M. GRABSKI
Principal Consultant
Envista Forensics

Date: October 30, 2026

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
First Assistant / Appellate Chief

***s/ Aaron A. Adams***
AARON A. ADAMS
Assistant Federal Public Defender
Federal Public Defender's Office
Middle and Western Districts of Louisiana
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501
Telephone: (337) 262-6336

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 30, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***